OPINION OF THE COURT
Vincent B. Campbell, J
On September 24, 1999 Greece Police Sergeant Thomas Schamerhorn was on patrol in the Town of Greece, New York, having been assigned to a traffic control and driving while intoxicated detail. At approximately 3:19 a.m., Sergeant Schamerhorn, traveling northbound on North Greece Road, noticed in his rearview mirror the headlights of a vehicle, which he suspected was speeding. He parked his patrol car and *656 waited for it to pass. As the vehicle approached, he identified it as a black 1995 Toyota pickup truck traveling at an estimated speed of 52 miles per hour in a 35 mile per hour speed zone. He confirmed the vehicle’s speed at 49 miles per hour with the use of his radar device. Sergeant Schamerhorn followed the ve - hicle for approximately one-quarter mile, observing it cross the center line of said roadway on four separate occasions as well as cross over the fog line markings on the shoulder of the road on three occasions. After stopping the vehicle, the officer asked the defendant for her license, registration and insurance card. The defendant produced her registration and insurance card and advised the officer that she had left her license at home. After acknowledging that she was speeding, the defendant told the officer that she had been at a party. He asked her if she had been drinking, and she responded that she had not been drinking at all. The officer testified that he made “a few observations of her condition” which led him to believe that she had been drinking, but never indicated during his testimony whether he had detected an odor of an alcoholic beverage at any time prior to the defendant’s arrest.
The defendant was asked to perform certain field sobriety tests. The first test administered was the alphabet test. The defendant stopped at the letter “S.” The second test was the finger to nose test. She missed the tip of her nose on all four attempts. The next test administered was the walk and turn test. The officer testified that the defendant had a hard time keeping her balance, did not touch her heel to toe, did not stay on the line, staggered to each side while walking and turning, and took 11 steps instead of 9 before making her turn. The last admissible test administered was the one leg stand test. The defendant on three occasions put her foot down prior to reaching the count of 30. At 3:28 a.m. the defendant was placed under arrest for driving while intoxicated in violation of section 1192 (3) of the Vehicle and Traffic Law.
After the defendant’s arrest, the sergeant found the defendant’s license in her wallet, and ran a Department of Motor Vehicles record check. He determined that her license had been either revoked or suspended, and therefore issued her a citation for aggravated unlicensed operation in the third degree in violation of section 511 (1) (A) of the Vehicle and Traffic Law.
At approximately 4:04 a.m., after being taken into custody, the defendant requested to speak to her attorney. The defendant was permitted to make three phone calls to her attorney. *657 After speaking with him, she advised the officer that she was not going to answer any questions or take any tests without her attorney being present. Consequently, a breath test was not administered nor were any postarrest statements taken from the defendant.
Regarding the initial stop of the defendant, the court finds that Sergeant Schamerhorn had reasonable cause to stop the defendant based on the traffic violations he had observed. (People v Ingle, 36 NY2d 413.) The stop was based on specific and articulable facts and not on mere whim or caprice.
As to the arrest of the defendant for driving while intoxicated, the record is devoid of any credible evidence establishing the presence of alcohol. The officer testified that he made “a few observations of her condition” during his initial questioning of the defendant which prompted him to ask her if she had been drinking. However, he failed to state during his testimony whether he had detected an odor of an alcoholic beverage at any time prior to the defendant’s arrest. Further, no written proof was offered into evidence that would have established the presence of alcohol. Although the record demonstrates that the defendant was driving erratically and failed the field sobriety tests, without proof of the presence of alcohol, the court must conclude that the People have not met their burden. Proof that an arresting officer in some manner detected an odor of an alcoholic beverage during his investigation is an essential element to support a finding of probable cause for a driving while intoxicated arrest. (People v McCarthy, 135 AD2d 1113 [4th Dept 1987]; People v D’Angelo, 244 AD2d 788 [3d Dept 1997], lv denied 91 NY2d 890.) Absent such proof, the defendant’s failure to properly perform the field sobriety tests, her physical appearance and condition, or the fact that she operated a motor vehicle in violation of the vehicle and traffic laws, can reasonably be attributed to causes other than intoxication. It is the People’s obligation to produce proof of intoxication at a probable cause hearing. The defendant is not required to disprove it. Therefore, the charge of driving while intoxicated must be dismissed.
As to the remaining charge of aggravated unlicensed operation in the third degree, the court finds that there was probable cause to arrest the defendant for said violation based on the results of a Department of Motor Vehicles record check conducted by the officer. Further, the prearrest statements of the defendant pertaining to her speeding, her attendance at a party, and the whereabouts of her driver’s license are admis *658 sible at the time of trial on the remaining charges. The defendant’s statements were given voluntarily without coercion in response to the officer’s investigatory inquiry. She was not, as a matter of law, in custody at the time and therefore Miranda warnings were not required (People v Bennett, 70 NY2d 891).